UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEM KENNETH UNDERWOOD,<br><br>                    Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>                    Defendant. | ) 1:04-cv-6163-SMS<br>)<br>) DECISION AND ORDER ON SOCIAL<br>) SECURITY COMPLAINT (DOC. 1)<br>)<br>) ORDER DIRECTING REMAND PURSUANT<br>) TO SENTENCE FOUR of 42 U.S.C. §<br>) 405(g)<br>)<br>) ORDER DIRECTING THE CLERK TO<br>) ENTER JUDGMENT FOR PLAINTIFF CLEM<br>) KENNETH UNDERWOOD AND AGAINST<br>) DEFENDANT JO ANNE B. BARNHART<br>) |

Plaintiff is proceeding in forma pauperis and with counsel against the Commissioner of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1] Judge Anthony W. Ishii ordered the case assigned to the undersigned Magistrate Judge for all purposes on January 3, 2005.

1 which have been submitted without oral argument to the Honorable
2 Sandra M. Snyder, United States Magistrate Judge.

3                        PRIOR PROCEEDINGS

4      On August March 27, 2001, Plaintiff applied for Supplemental
5 Security Income (SSI), alleging disability since September 1,
6 1990,[2] due to degenerative bone disease of the hips and legs,
7 severe knee injuries, and a learning disability. (Tr. 185-88,
8 245.) Plaintiff's claim was denied initially and on
9 reconsideration. (Id. at 116, 144-46.) Plaintiff requested a
10 hearing before an administrative law judge (ALJ) of the Social
11 Security Administration (SSA). On February 19, 2003, and August
12 25, 2003, Plaintiff appeared with an attorney and testified
13 before the ALJ, the Honorable James P. Berry. On September 23,
14 2003, the ALJ denied Plaintiff's application for benefits. (Id.
15 at 15-20.) Plaintiff appealed the ALJ's decision to the Appeals
16 Council. On July 8, 2004, the Appeals Council denied Plaintiff's
17 request for review. (Id. at 6-8.)

18      On August 26, 2004, Plaintiff filed the complaint in the
19 instant action; the administrative record was lodged by Defendant
20 on December 13, 2004. On May 13, 2005, Plaintiff filed an opening
21 brief. On July 21, 2005, Defendant filed a brief in opposition.
22 On August 3, 2005, Plaintiff filed a reply brief.

23                     ADMINISTRATIVE FINDINGS

24      The ALJ determined that Plaintiff had osteoarthritis and an
25 affective disorder, but he concluded these impairments were not

26

27       [2]As Defendant notes, under title XVI, there are no retroactive benefits;
thus, consideration of whether or not a claimant is disabled is limited to the
28 period after the date of the filing of the application for SSI benefits. 20
C.F.R. § 416.335; Soc. Sec. Ruling 83-20.

severe enough to meet or medically equal any of the impairments
listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 19). The ALJ
found that Plaintiff's allegations regarding his limitations were
not totally credible (Tr. 19). The ALJ found that Plaintiff
retained the residual functional capacity (RFC) to lift and carry
twenty pounds occasionally and ten pounds frequently, sit for
eight hours, and stand and walk for less than two hours out of an
eight-hour day (Tr. 19). He could occasionally push and pull with
the left upper extremities but could not climb, balance, kneel,
crouch, crawl, or stoop. He was able to maintain concentration
and attention to perform simple, repetitive tasks, maintain
persistence and pace, interact and relate to others, adapt to
usual changes in the work setting, and adhere to safety rules
(Tr. 19). The ALJ, relying on the testimony of the vocational
expert, and referencing the Medical-Vocational Guidelines as a
framework for decision-making, found Plaintiff not disabled
within the meaning of the Social Security Act (Tr. 19).

<u>ISSUES PRESENTED</u>

The following issues are presented for decision:

1) Whether or not the ALJ made errors with respect to
evaluating and stating reasons for his weighing of expert
opinions, including the adequacy of the ALJ's statement of
reasons for rejecting the opinion of consulting examiner Dr.
Barnett and the accuracy of the ALJ's characterization and
weighing of the opinion of the treating physician, Dr. Nguyen;

2) Whether or not the ALJ erred with respect to the
relevance of evidence of Plaintiff's condition in 1997 when
Plaintiff was in prison;

3) Whether the ALJ erred in failing to ask the vocational expert (VE) regarding Plaintiff's psychological disorder causing him to exhibit moderate difficulties in maintaining concentration, persistence, or pace, and social functioning;

4) Whether Plaintiff's inability to stoop significantly eroded the unskilled, sedentary occupational base and required a finding of disability;

5) Whether the ALJ erred in failing to find that obesity was a severe impairment and in applying Social Security Ruling 02-01p;

6) Whether the ALJ erred in failing to consider whether Plaintiff's mental retardation was medically equivalent to Listing 12.05;

7) Whether the grids are inapplicable;

8) Whether the ALJ erred in failing to adopt the VE testimony that most accurately matched the evidence.

<u>FACTS</u>

I. <u>Testimony at the Hearings</u>

At the hearing held on February 19, 2003, Plaintiff, represented by his attorney, testified regarding his age (twenty-nine years), education, work history, and medical impairments (Tr. 45-64). He was born on September 10, 1973, but did not graduate from high school, where he took special education classes (Tr. 45). He testified that he was 5'8 and weighed 370-some pounds (Tr. 45). He had gained 170 pounds in the past two years  when he had quit smoking and using drugs (Tr. 46).

He stated he had a birth defect of the hip, called Legge-Perthes disease, and had hip pain that had worsened over

the past six or seven years (Tr. 46-47). He had leg pain, on some
days could not walk, could only stand about twenty to thirty
minutes at a time, and did not think he could stand for four
hours in a work day (Tr. 48). He was bedridden for two or three
days a month. He took Acetaminophen III with Codeine for pain,
which helped a little but made him drowsy and caused him to have
to nap (Tr. 49, 64). He stated he could sit for 30 minutes at a
time and could probably walk about two blocks before his hip hurt
(Tr. 50). He also testified that he could six for four or five
hours total out of an eight-hour day (Tr. 62). He could probably
lift a gallon of milk and groceries (Tr. 50-51). He stated his
arms were all right (Tr. 51). He did not do household chores
because his friend's wife did them (Tr. 52). He also had problems
with his knees due to a car accident he was in at age fifteen
where the dashboard cut into his knees (Tr. 52). He stated there
was no damage to the bone, but there was damage to the muscles
(Tr. 52). He could not kneel or bend, and his knees hurt when it
got cold.

He testified that his weight affected his ability to run,
move around, bend over, tie his shoes, and put on socks (Tr. 53).
In prison he was allowed to sleep on the bottom bunk because of
his hip; he had standing and lifting limitations (Tr. 55).
Plaintiff stated that he took Glucophage for diabetes, which
controlled his condition (Tr. 56-57).

He testified that he worked as a janitor when he was
seventeen for about a month and a half (Tr. 58). He stated he did
not really have other work because mainly, he had been
incarcerated (Tr. 58). He did landscaping jobs in prison and

occasionally mowed lawns (Tr. 59). He spent the day watching television and playing video games; he did his own laundry (Tr. 60-61). He stated he could lift ten or fifteen pounds (Tr. 62).

Thomas Decksler, a vocational expert, testified that Plaintiff's past work did not amount to substantial gainful activity (Tr. 65).

At the supplemental hearing held on August 25, 2003, Z. E. Judith Najarian, a vocational expert, in response to a hypothetical question by the ALJ, identified a significant number of jobs in the economy that a person with the limitations the ALJ found Plaintiff to have, could perform (Tr. 73). Those jobs included waxer, assembler, and cashier (Tr. 73-74).

II. <u>Medical History</u>

On October 24, 1998, Plaintiff underwent a consultative internal medicine examination by Haichi Steven Lin, M.D. (Tr. 433-35). Plaintiff appeared to favor his right leg when walking into the clinic; he was in no acute distress, but was described as grossly obese (Tr. 433). On examination the lungs were clear, and the heart rate was regular. Both knees had surgical scars, and his right knee was tender. His right hip was tender and painful secondary to congenital bone disease; however, there were no bony deformities, effusions, crepitus, erythema, or edema (Tr. 434). Range of motion of the spine, shoulders, hips, knees and ankles were within normal limits (Tr. 434). Strength was 5/5 throughout the upper and lower extremities, and there was normal bulk and tone. He was alert and oriented to person, place, and time. Behavior and affect were appropriate (Tr. 434-35).

Dr. Lin diagnosed joint pain with poor prognosis secondary

to being overweight; Plaintiff was limited to light work, lifting and carrying twenty pounds occasionally, ten pounds frequently, walking and standing for six hours out of an eight-hour work day, and occasional stooping and crouching. (Tr. 435.)

On June 2, 1999, Plaintiff underwent a consultative psychological examination by Roy Fratini, Ph.D. (Tr. 436-440). Plaintiff presented as generally anxious and apprehensive, but cooperative, polite, and interactive (Tr. 436). He showed understanding of test instructions. Vocabulary phrasing and articulation were unremarkable. Motor performance was regular, coordinated and smooth. He showed little inappropriate shift of attention, sitting quietly with few irrelevant movements. He performed well on the Block Design sub-test of the WAIS-III but seemed to give up easily on another part of the exam when it became difficult (Tr. 436). On mental status examination, he was oriented times four; all modes of memory were intact; his thought processes were productive, organized and coherent; he reported that he had hallucinations when he was doing drugs; he scored in the borderline range of intelligence; and attention and concentration were intact during the interview (Tr. 439). The diagnostic impression was mood disorder (latent anger, depression, and anxiety), alcohol abuse in remission for three months, and amphetamine abuse in remission for three months (Tr. 439).

On August 9, 2001, Plaintiff underwent a consultative orthopedic examination by Frederick Young, M.D. (Tr. 524-525). Plaintiff complained of pain in his right knee and hip. He explained that he was in a car accident in 1989 and injured both

knees, and that "the thing that bothers him the most is his right knee" (Tr. 524). He had surgery on both knees, but no other surgeries (Tr. 524). He was described as markedly obese and deconditioned at 5'8 and 350 pounds. Range of motion of the upper extremities, back, and hips, knees, and ankles, was noted to be normal (Tr. 524-525). There was no instability of the knees or ankles; sensation was intact (Tr. 525). He had a wide-based gait that produced a waddling (Tr. 525). However, Dr. Young stated: "Besides the patient's morbid obesity, he was fine. No particular musculoskeletal findings, so the patient's work-activity will be restricted because primarily this is morbid obesity." (Tr. 525.)

On August 23, 2001, Plaintiff underwent a consultative psychiatric examination by Michael S. Barnett, M.D. (Tr. 526-529). Dr. Barnett indicated that it was his first contact with Plaintiff, a twenty-seven-year-old while male (Tr. 526). By introduction, it was noted that Plaintiff had been in prison for violating his parole because of "dirty" drug tests and possession of a deadly weapon (Tr. 526). He had been in prison four times and had been incarcerated for ten years beginning at age thirteen (Tr. 26). He was casually dressed with multiple tattoos; he did not appear to be chronically mentally ill or have involuntary movements.

He indicated that he occasionally needed help with his shoes and socks because of his obesity. He could help cook, and a friend helped him clean (Tr. 526). He grocery shopped with a friend. He supported himself with food stamps and help from his friend and had never been gainfully employed (Tr. 526). He went out of the house twice a week to visit friends or family, and

friends visited him daily (Tr. 526). A friend suggested that he

apply for social security disability (Tr. 526).

Plaintiff had no allergies to medicines and took no

medications (Tr. 526). He began abusing drugs (marijuana, cocaine

and speed) at the age of eleven and stopped five months before

the exam (Tr. 526). His chief complaint was that he did not get

along well with people. He indicated that his appetite was good,

his energy was low, and his concentration was poor (Tr. 526). He

indicated that he was not suicidal, and he denied psychotic or

manic symptoms (Tr. 527). On mental status examination he was

described as "a very obese, slow white male in no acute psychic

distress" (Tr. 527). His speech was relevant, coherent and

organized; mood was depressed and affect was blunted; he was able

to perform serial threes and his recent memory was intact (Tr.

527). His social functioning was at a very low level. (Id.)

Dr. Barnett's assessment was that Plaintiff had a long

history of substance abuse and was mentally retarded, with a poor

education and a long history of criminal activity (Tr. 527). Dr.

Barnett believed Plaintiff was somewhat depressed and could

benefit from antidepressant medication (Tr. 527). Dr. Barnett

diagnosed depressive disorder NOS, polysubstance abuse in

remission, mental retardation, obesity, and knee pain (Tr. 527).

Dr. Barnett opined that Plaintiff would struggle to work but

would have "no difficulty being able to understand, remember, and

carry out simple one and two-step job instructions (Tr. 528). Dr.

Barnett felt that Plaintiff would need special or additional

supervision to work but had "no psychiatric symptoms that would

interfere with the completion of a normal work day or work

week"(Tr. 528). However, he would have a difficult time
interacting with supervisors, coworkers, or the public and coping
with stressors encountered in a normally competitive workplace
(Tr. 528).

On October 22, 2001, Dr. Perry and Dr. James V. Glaser,
state agency medical consultants, opined that Plaintiff's Legg-
Perthes disease and morbid obesity resulted in an ability to lift
and carry twenty pounds occasionally and ten pounds frequently,
stand or walk about six hours, and sit about six hours in an
eight-hour day, with unlimited pushing and pulling; however, he
was precluded by morbid obesity from climbing ladders or ropes,
from stooping and crouching more than occasionally. (Tr. 133-40.)

On October 24, 2001, Dr. Evangeline Murillo, a state agency
medical consultant, opined that Plaintiff's depression, low IQ,
and mental retardation resulted in mild difficulties of
concentration, persistence, or pace. (Tr. 117-30.) Plaintiff was
moderately limited in the ability to understand, remember, and
carry out detailed instructions and the ability to work in
coordination with or proximity to others without being distracted
by them; however, he was able to sustain concentration and
persistence sufficiently to perform very short instructions
consistently, and he could adapt to normal changes in the
workplace, interact with others, and accept supervision. He would
not require more than the usual supervision in order to complete
work. (Tr. 147-49.)

On June 4, 2002, Dr. Archimedes Garcia affirmed Dr.
Murillo's mental functional capacity evaluation of October 2001.
(Tr. 149.)

1    On June 17, 2002, an x-ray of the right hip revealed a
2  marked flattening and morphologic deformity of the femoral head,
3  suggesting a remote history of femoral head avascular
4  necrosis/Legg-Perthes disease, most likely chronic; there were no
5  fractures or acute boney abnormalities. (Tr. 536.)

6    On August 5, 2002, Chi Nguyen, M.D., completed a medical
7  source statement form for assessment of functional capacity. (Tr.
8  530-533). The form indicated that Plaintiff could lift and
9  carry less than ten pounds, stand and/or walk less than two
10 hours, and sit continuously with breaks every two hours for less
11 than six hours. The form indicated that Plaintiff could not
12 tolerate exposure to unprotected heights or exposure to dust and
13 fumes, and could only occasionally drive automotive equipment, be
14 around moving machinery, or be exposed to noise (Tr. 532). The
15 form indicated the limitations were "due to asthma" and the
16 assessment was "unknown" (Tr. 532). Objective signs of pain were
17 noted to be documented by a June 2002 x-ray of the right hip
18 suggesting a remote history of Legg-Perthes disease (Tr. 530).
19 Plaintiff was restricted from squatting, crawling, stooping, and
20 reaching; but he could occasionally bend, climb, and crouch (Tr.
21 531). The reason given for these limitations was "right hip and
22 low back pain" (Tr. 531). Dr. Nguyen opined that Plaintiff's pain
23 was moderate and would often interfere with attention and
24 concentration (Tr. 533). Dr. Nguyen indicated that Plaintiff was
25 morbidly obese, had surgeries in both knees, and was in a car
26 accident in 1989 (Tr. 533). Dr. Nguyen noted that the date his
27 restrictions became effective was July 2000 (Tr. 533).

28    On April 18, 2003, Plaintiff, at age 29, underwent another

consultative orthopedic examination by Dr. Young (Tr. 549-555).
He was described as well developed and well nourished at five
feet seven and one-half inches in height and 346 pounds (Tr.
549). There were no spasms in the neck, shoulders, or back; hips
showed normal range of motion with no pain, and knees showed no
swelling or tenderness with normal range of motion; gait showed a
slight decrease in single left stance, but the exam was noted as
otherwise normal (Tr. 549). Dr. Young stated that Plaintiff was
felt to have morbid obesity with a history of surgery to his
knees, which would preclude him from some activities, and, in
those circumstances, he would be able to "perform light duty or
desk type activities" (Tr. 550). Dr. Young indicated that
Plaintiff could lift twenty pounds frequently and ten pounds
occasionally and could stand and/or walk less than two hours in
an eight-hour workday; however, sitting was unimpaired; he was
limited in the lower extremities due to morbid obesity and
osteoarthritis of the knees (Tr. 552). He could never climb,
balance, kneel, crouch, crawl, or stoop; he had no manipulative
limitations, visual/communicative limitations, or environmental
limitations (Tr. 553-554).

A medication list received in June 2003 listed Acetaminophen
with Codeine, Metaformin, Lotensin, Elavil, and Darvocet. (Tr.
295.)

There are clinical records in the file from Porterville
Health Care Center containing drug screen tests and hemoglobin
tests (Tr. 556-567). There are clinical records in the file from
Visalia Health Care Center (Tr. 568-587). These records show that
he was followed for diabetes and evaluated for hepatitis and

12

liver function (Tr. 584, 587). The importance of weight loss was discussed with him (Tr. 587). Hepatitis C viral load was greater than 266,000; the rest of the lab was normal (Tr. 570, 572).

<u>ANALYSIS</u>

I. <u>Request to Reopen</u>

On page 2 of the opening brief, Plaintiff requests that the Court reopen a prior application filed on April 16, 1999, because 1) the second application was filed within two years of the first application, and 2) he has good cause to reopen because he was not represented by an attorney, he suffers from a mental deficit/borderline intellectual functioning/mental retardation, and he did not know how to appeal or what procedures to follow. Plaintiff does not submit any declaration or other evidence in support of these asserted facts, many of which are extra-record.

Defendant correctly contends that Plaintiff's request to reopen the prior SSI application is improper because the earlier application has become final and binding, and the Court is without jurisdiction to consider this request. Regulations, and not statute, provide for additional consideration of a claim that has been subject to the SSA's decision or determination. The <u>agency</u> may reopen a prior agency determination within specified time limits after the date of initial determination, twelve months as a matter of right and four years upon a finding of good cause, which exists if new material evidence is provided or specific errors are discovered. 20 C.F.R. § 404.987-404.989 (DIB); 416.1487-416.1489 (SSI). This Court is without jurisdiction to order a case reopened or to review a denial of a request to reopen in the absence of a challenge on narrow

13

1  constitutional grounds. <u>Califano v. Sanders</u>, 430 U.S. 99, 104-08
2  (1977). There is no provision under the regulations for the Court
3  to reopen a prior filing.

4      II. <u>Disability</u>

5      In order to qualify for benefits, a claimant must establish
6  that she is unable to engage in substantial gainful activity due
7  to a medically determinable physical or mental impairment which
8  has lasted or can be expected to last for a continuous period of
9  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
10 claimant must demonstrate a physical or mental impairment of such
11 severity that the claimant is not only unable to do the
12 claimant's previous work, but cannot, considering age, education,
13 and work experience, engage in any other kind of substantial
14 gainful work which exists in the national economy. 42 U.S.C.
15 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
16 Cir. 1989). The burden of establishing a disability is initially
17 on the claimant, who must prove that the claimant is unable to
18 return to his or her former type of work; the burden then shifts
19 to the Commissioner to identify other jobs that the claimant is
20 capable of performing considering the claimant's residual
21 functional capacity, as well as her age, education and last
22 fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
23 1273, 1275 (9th Cir. 1990).

24     The regulations provide that the ALJ must make specific
25 sequential determinations in the process of evaluating a
26 disability: 1) whether the applicant engaged in substantial
27 gainful activity since the alleged date of the onset of the
28 impairment, 2) whether solely on the basis of the medical

evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. See 20 C.F.R. § 416.920.

III. Rejection of Dr. Barnett's Opinion

Plaintiff argues that the ALJ failed to state reasons for
rejecting the opinion of the consulting, examining psychiatrist,
Dr. Barnett. Defendant argues that Dr. Barnett's findings were
ambiguous and inconsistent, and thus the ALJ correctly reconciled
the conflicts.

The uncontroverted opinion of an examining, non-treating
physician may be rejected if the ALJ states clear and convincing
reasons. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995);
Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A
controverted examining physician's opinion may be rejected by the
statement of specific and legitimate reasons supported by
substantial evidence in the record. Andrews, 53 F.3d at 1042. The
rejection of an opinion must be explicit, and reasons must be
stated; it is not sufficient simply to rely on another opinion
without a statement of reasons therefor. Nguyen v. Chater, 100

1  F.3d 1462, 1464 (9th Cir. 1996).

2     Here, the ALJ noted Dr. Barnett's finding that Plaintiff had
3  no psychiatric symptoms that would interfere with the claimant's
4  completion of a normal workday or work week. (Tr. 17.) Further,
5  he noted that Dr. Barnett determined that Plaintiff could
6  understand, remember, and carry out simple one or two-step job
7  instructions, but would be unable to work regularly or perform
8  work activities on a consistent basis or engage in work
9  activities without special or additional supervision; he would
10 have difficulty interacting with supervisors, co-workers, or the
11 public and coping with stressors encountered in a normally
12 competitive work place. (Tr. 17.)

13     The ALJ never expressly rejected Dr. Barnett's conclusions
14 or stated any reason for rejecting Dr. Barnett's conclusions.
15 Although the ALJ relied on the opinions of Dr. Lin and Dr.
16 Fratini and the state agency physicians (Tr. 17-18), the only
17 statement he made about any of the opinions was as follows:

18     These opinions from the claimant's treating or
       examining physicians do not indicate that the
19     claimant is disabled or even has limitations
       greater than those determined in this decision.
20
   (Tr. 18.)
21
22     This reason does not constitute a legitimate reason,
23 supported by substantial evidence, for rejecting Dr. Barnett's
24 opinion. Dr. Barnett opined that Plaintiff was unable to work
25 regularly or to perform work activities on a consistent basis.
   This would render him disabled pursuant to Social Security
26 regulations, which define residual functional capacity as the
27 "maximum degree to which the individual retains the capacity for
28

1  sustained performance of the physical-mental requirements of

2  jobs." <u>Reddick v. Chater</u>, 157 F.3d 715, 724 (9th Cir. 1998)

3  (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) and <u>Lester v.</u>

4  <u>Chater</u>, 81 F.3d 821, 833 (9th Cir. 1995)). The Commissioner must

5  evaluate the claimant's "ability to work on a sustained basis."

6  <u>Id.</u> (citing 20 C.F.R. § 404.1512(a)); <u>Lester</u>, 81 F.3d at 833);

7  <u>see</u> 20 C.F.R. § 416.945. A "regular and continuing basis" means

8  eight hours a day, five days a week, or an equivalent work

9  schedule. S.S.R. 96-8p at 1, 2. The process involves an

10 assessment of physical abilities and then of the nature and

11 extent of physical limitations with respect to the ability to

12 engage in work activity on a regular and continuing basis. 20

13 C.F.R. § 404.1545(b). Occasional symptom-free periods and even

14 the sporadic ability to work are not inconsistent with

15 disability. <u>Reddick v. Chater</u>, 157 F.3d at 724.

16      Contrary to Defendant's assertions, the ALJ did not resolve

17 inconsistent or conflicting aspects of the expert's opinion or

18 explain why he accepted some parts of the opinion and not others;

19 rather, he just noted the inconsistent findings and then, as

20 reflected only by reference to other opinions, he apparently

21 relied on other opinions. This does not constitute an adequate

22 statement of reasons. Further, substantial evidence does not

23 support the reason stated.

24      IV. <u>Dr. Nguyen</u>

25      Plaintiff argues that the ALJ did not state adequate reasons

26 for rejecting the opinion of treating physician Dr. Nguyen. The

27 only reason stated was that the opinions did not indicate

28 disability or limitations greater than the RFC assigned by the

17

1 ALJ. (Tr. 18.)

2    An ALJ may disregard a treating physician's opinion that is

3 controverted by other opinions only by setting forth specific,

4 legitimate reasons for doing so that are based on substantial

5 evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762

6 (9th Cir. 1989). This burden is met by stating a detailed and

7 thorough summary of the facts and conflicting clinical evidence,

8 stating the interpretation of the evidence, and making findings.

9 <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986).

10    Because Dr. Nguyen's limitations included lifting and

11 carrying ten pounds instead of twenty as in the ALJ's RFC, and

12 sitting for less than six hours with breaks every two hours

13 instead of sitting for eight hours as in the ALJ's RFC, Dr.

14 Nguyen's opinion did indicate greater limitations than the RFC

15 assigned by the ALJ. Further, as Plaintiff notes, the VE

16 testified that no jobs existed with the limitations imposed by

17 Dr. Nguyen. (Tr. 75.) Therefore, the reason stated by the ALJ was

18 not legitimate and was not supported by substantial evidence.

19 Further, the ALJ's review of the evidence did not include

20 interpretation or any other evaluation that might explain the

21 ALJ's conclusions.

22    Defendant argues that there are conflicting opinions upon

23 which the ALJ relied. However, the mere presence of evidence that

24 would support a finding is not sufficient; rather, the Court must

25 be able to discern the reason or basis for the ALJ's reliance on

26 that evidence. This Court is limited to reviewing the findings of

27 the ALJ and to reviewing the specific facts and reasons that the

28 ALJ asserts. <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir.

2003) (holding that the ALJ's statement of what evidence was not credible and what evidence suggested the lack of credibility sufficed as specific findings or reasons for rejecting a claimant's testimony, but holding that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). The district court cannot make findings for the ALJ. Id. Here, the Court cannot perform meaningful appellate review of the ALJ's reasoning because although it may be inferred which opinions the ALJ relied upon or could have relied upon, his reasons for doing so are not stated.

V. Evidence of Plaintiff's Condition in 1997

In rejecting the degree of pain and symptoms alleged by Plaintiff, the ALJ reasoned that Plaintiff had not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic. (Tr. 17.) The ALJ then stated:

> While incarcerated in 1997, the claimant was restricted to light duty due to a problem with right hip, and was described as mobility impaired; however, he was observed to be able to walk 100 yards or up a flight of stairs without pause or without aids. It was determined that there was no disability affecting placement (Exhibit 5F, p. 81).

(Tr. 17.)

Plaintiff notes that he filed an SSI claim in April 1999 and again in March 2001 (Tr. 181-88). Plaintiff had gained 150 pounds between incarceration in 1997 and the time of the hearing in 2003 (Tr. 478 [weight of 220 pounds in February 1997], 43, 45 [weight of "370-some lbs." at hearing in February 2003]). Plaintiff asserts that his condition in 1997 was irrelevant because of the

19

1  passage of time and because of the change in his weight.

2  Defendant asserts that it was not error for the ALJ to consider

3  it, and in any event, Plaintiff's obesity was taken into account

4  by Dr. Young when he assessed Plaintiff's RFC.

5      The ALJ's mention of Plaintiff's mobility status in prison

6  occurred in the course of the ALJ's assessment of Plaintiff's

7  credibility. When examined in context (Tr. 16-17), the ALJ's

8  reference to the 1997 prison record does not appear to be

9  directly related to the ALJ's assessment of Plaintiff's

10 condition; rather, it appears to be a reference to an

11 inconsistency between a claim made by Plaintiff that he was

12 limited in his mobility, and the observed facts concerning

13 Plaintiff's ability to ambulate. Thus, the statement is related

14 to Plaintiff's credibility.

15     It is established that the existence and severity of a

16 person's reaction to a physical ailment, such as the existence

17 and severity of pain, are subjective phenomena, the extent of

18 which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d

19 639, 642 (9th Cir. 1995). In order to reject a claimant's

20 subjective complaints, the ALJ must provide specific, cogent

21 reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834

22 (9th Cir. 1995). Once the claimant introduces medical evidence of

23 an underlying impairment that could reasonably be expected to

24 produce some degree of the subjective symptoms, the Commissioner

25 may not discredit the claimant's testimony as to subjective

26 symptoms merely because they are unsupported by objective

27 evidence such as objective medical findings. Id.; Smolen v.

28 Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is

affirmative evidence tending to show that the claimant is
malingering, the reasons for rejecting the claimant's testimony
must be clear and convincing, and the ALJ must set forth the
rejection by identifying what testimony is not credible and what
evidence undermines the claimant's complaints. Lester v. Chater,
81 F.3d at 834. The findings of the adjudicator must be properly
supported by the record and must be sufficiently specific to
allow a reviewing court to conclude that the adjudicator rejected
the claimant's testimony on permissible grounds and did not
arbitrarily discredit a claimant's testimony. Bunnell v.
Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at
641-42 (9th Cir. 1995); see 20 C.F.R. § 416.929(c).

    Included in the factors that an ALJ may consider in weighing
a claimant's credibility are the claimant's reputation for
truthfulness; inconsistencies either in the claimant's testimony
or between the claimant's testimony and the claimant's conduct,
daily activities, or work record; and testimony from physicians
and third parties concerning the nature, severity, and effect of
the symptoms of which the claimant complains. Inconsistent
statements are matters generally considered in evaluating
credibility and are properly factored in evaluating the
credibility of a claimant with respect to subjective complaints.
Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ
may consider whether the Plaintiff's testimony is believable or
not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). The
ALJ thus properly considered the inconsistency between
Plaintiff's light duty status and his actual ability. The
relevance of this inconsistency was not affected by the later

changes in Plaintiff's weight.

Further, the Court notes that the ALJ relied on the extent of Plaintiff's treatment, a factor that is not challenged by Plaintiff and that is appropriately considered in evaluating subjective claims. <u>Johnson v. Shalala</u> 60 F.3d 1428, 1433-34 (9th Cir. 1995).

Accordingly, the ALJ's consideration of the evidence from the period of Plaintiff's incarceration was not inappropriate, and, in any event, the record reveals that the ALJ stated legally sufficient reasons, supported by substantial evidence, to support his finding with respect to Plaintiff's subjective claims.

VI. <u>Questioning of the VE</u>

Plaintiff complains that the ALJ failed to include in his hypothetical at step five one of Plaintiff's limitations, namely, that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, and social functioning.

A hypothetical question should include the medical assumptions that are supported by substantial evidence in the record that reflects each of a claimant's impairments. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The question should include all the claimant's limitations, physical and mental, that are supported by the record. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956 (9th Cir. 2002); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). Although a hypothetical should include subjective complaints, it need not include complaints which were rejected with a statement of reasons supported in the record. <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir. 1997).

Here, the ALJ found the following with respect to Plaintiff's mental RFC:

> He is able to maintain attention and concentration to perform simple repetitive tasks, persistence and pace, interact and relate to others, adapt to usual changes in the work setting, and adhere to safety rules.

(Tr. 18.) Earlier in the analysis, the ALJ had undertaken an analysis of Plaintiff's psychological disorders pursuant to "the 'B' criteria," (Tr. 17), namely, the extent of difficulty in maintaining concentration, persistence, or pace, and social functioning, activities of daily living, and episodes of decompensation. In the earlier part of the analysis, the ALJ had concluded:

> The Administrative Law Judge concludes that the claimant's psychological disorders, when evaluated under the "B" criteria, cause him to exhibit moderate difficulties in maintaining concentration, persistence or pace, and social functioning, but he exhibits only a mild restriction in activities of daily living, and one or two repeated episodes of decompensation.

(Tr. 17.) It is clear that this earlier language involved an evaluation pursuant to 20 C.F.R. § 416.920a, which concerns the severity of a mental impairment and whether or not a severe impairment meets or is equivalent in severity to a listed mental disorder. § 416.920a(a), (d). Although this evaluation concerns identifying and assessing a claimant's limitations, it differs from the ALJ's determination of a claimant's actual RFC, which is stated in terms of capacity to engage in work despite all limitations. 20 C.F.R. § 416.945; see, Thomas v. Barnhart, 278

1   F.3d 947, 956 (9th Cir. 2002); Soc. Sec. Ruling 96-8p.[3]

2       Here, after rating Plaintiff under the "B" criteria, the ALJ

3   continued to discuss the expert opinions regarding Plaintiff's

4   mental capacity. (Tr. 17-18.) The ALJ then formulated his

5   conclusion that Plaintiff was able to maintain attention and

6   concentration to perform simple repetitive tasks, persistence and

7   pace, interact and relate to others, adapt to usual changes in

8   the work setting, and adhere to safety rules. (Tr. 18.)

9       The mental limitations that were included in the RFC by the

10  ALJ were included in the hypothetical questions to the VE.[4] (Tr.

11  73.) Thus, the hypothetical was adequate, and the VE's testimony

12  that one with Plaintiff's RFC could perform significant work (Tr.

13  73-74) constituted substantial evidence in support of the ALJ's

14  conclusion that significant work existed for Plaintiff.

15      VII. <u>Preclusion from Stooping</u>

16      The ALJ concluded that Plaintiff, who could perform

17  sedentary unskilled work, could not stoop. (Tr. 18.) Plaintiff

18  notes that Social Security Ruling 96-9p states that an ability to

19  stoop occasionally is required in most unskilled sedentary

20  occupations, and that a complete inability to stoop would

21  significantly erode the unskilled sedentary occupational base

22  such that a finding that the individual is disabled would usually

23

24      [3] Soc. Sec. Ruling 96-8p states: The adjudicator must remember that the limitations identified in the
    "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental
25  impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5
    of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in
26  the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of
    Impairments, and summarized on the PRTF [psychiatric review technique form]."

27      [4] The hypothetical question included maintaining attention and concentration to perform simple repetitive
    tasks, maintaining persistence and pace, interacting and relating to others, adapt to usual changes in the work
28  settings, and adhere to safety rules.

1  apply. Soc. Sec. Ruling 96-9p. Plaintiff concludes from this that

2  the conclusion that Plaintiff was not disabled was thus

3  erroneous.

4      Here, the ALJ included the preclusion from stooping in the

5  hypothetical to the VE, and the VE responded that one with that

6  RFC could perform significant work in the form of unskilled

7  sedentary occupations including a production job of waxer,

8  assembler, and cashier, with specified thousands of positions in

9  the national and California economies. (Tr. 73-74.) It is

10  established that an ALJ may rely on specific VE testimony

11  concerning the availability of jobs, which generally constitutes

12  reliable job information. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435

13  (9th Cir. 1995) (quoting <u>Whitehouse v. Sullivan</u>, 949 F.2d 1005,

14  1007 (6th Cir. 1994)). Introduction of evidence of the

15  characteristics of specific jobs available in the local area

16  through the testimony of a vocational expert is appropriate, even

17  though the job traits may vary from the way the job title is

18  classified in the DOT. <u>Id.</u>

19      The Court thus rejects Plaintiff's contention that despite

20  the specific testimony of the VE, Plaintiff's limitation

21  regarding stooping rendered her disabled.

22      VIII. <u>Obesity</u>

23      Plaintiff argues that the ALJ erred in failing to discuss

24  the effect of Plaintiff's obesity on his severely deformed hip

25  and his significant limitation from stooping, crouching,

26  crawling, bending and climbing; the ALJ failed to apply Social

27  Security Ruling 02-01p.

28      According to the Social Security Rules, obesity,

1   as other medical impairments, will be deemed a
2   "severe" impairment, "when alone or in combination
    with another medically determinable physical or mental
3   impairment(s), it significantly limits an individual's
    physical or mental ability to do basic work activities."
4   SSR 02-01p (2002). In determining whether a claimant's
    obesity is a severe impairment, an ALJ must "do an
    individualized assessment of the impact of obesity
5   on an individual's functioning." Id.

6   Burch v. Barnhart, 400 F.3d 676, 682 (9ᵗʰ Cir. 2005).

7       Here, the ALJ noted the undisputed diagnoses of obesity but

8   did not determine that Plaintiff had an impairment of obesity or

9   otherwise evaluate or reject the expert opinions regarding that

10  impairment. (Tr. 16.) Based on the foregoing analysis, this case

11  must be remanded for other reasons, namely, in order for the ALJ

12  to state reasons for his weighing and acceptance or rejection of

13  expert opinions. Because the case must be remanded for other

14  reasons, and because the result on remand is not a foregone

15  conclusion, the claimant on remand will have an opportunity to

16  argue that obesity was a severe impairment and/or that it met or

17  equaled a listing or otherwise rendered Plaintiff disabled. The

18  ALJ will consider obesity and Plaintiff's impairments at all

19  pertinent steps of the sequential analysis, and will make all

20  necessary express findings regarding Plaintiff's obesity.

21      IX. Mental Retardation

22      Plaintiff argues that the ALJ erred in failing to consider

23  whether Plaintiff's mental retardation was medically equivalent

24  to Listing 12.05 (mental retardation), which requires mental

25  incapacity evidenced by dependence on others for personal needs,

26  inability to follow directions to the extent that standardized

27  measures of intellectual functioning are precluded, or IQ scores

28  of sixty through seventy in combination with marked restrictions

of functioning.

It is Plaintiff's burden to establish that his impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. <u>Gonzales v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

It does not appear that Plaintiff provided evidence of the required deficit in functioning or IQ scores (his scores were verbal IQ, seventy-six; performance IQ, seventy-three; and full-scale IQ, seventy-two, Tr. 437). State agency physicians opined that Plaintiff's condition did not meet or equal listings 12.04 or 12.05 (Tr. 117, 127). Under the circumstances, Plaintiff has not offered any theory of how his impairments combined to equal a listing; thus, the Court concludes that the ALJ's handling of this issue was appropriate.[5] <u>Cf.</u> <u>Lewis v. Apfel</u>, 236 F.3d 503,

---

[5] The only theory suggested by Plaintiff regarding meeting a listing is pursuant to the SSA's Program Operations Manual System (POMS), which recognizes that IQ scores in the range of 70 to 75 might support equivalence determination if they are accompanied by other physical or mental disorders that impose additional and significant work-related limitation of function. POMS DI 24515.056 (D)(1). However, it is established that internal

1 514 (9th Cir. 2001).

2     X. <u>Use of the Grids</u>

3     The ALJ used Rule 201.24 of the "grids," or the medical-
4 vocational guidelines, as a framework to deny benefits. Plaintiff
5 argues that use of the grids was inappropriate because of his
6 pain, obesity, and mental impairment, which render the grids
7 inapplicable.

8     It is the Defendant's burden to show that Plaintiff could
9 perform other work existing in significant numbers in the
10 national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th
11 Cir. 1999). Defendant may meet this burden either by obtaining
12 the opinion of the VE or by relying on the medical-vocational
13 guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2, which
14 constitute administrative notice of the existence of jobs for
15 persons with specified limitations. <u>Id.</u> at 1099. When the grids
16 are applicable, the Secretary may obtain a directed conclusion of
17 nondisability and may take administrative notice that jobs exist
18 in the national economy that a claimant can perform. <u>Heckler v.</u>
19 <u>Campbell</u>, 461 U.S. 458, 461-462. The guidelines may only be
20 applied when they accurately reflect a claimant's limitations.
21 <u>Desrosiers v. Secretary of Health & Human Services</u>, 846 F.2d 573,
22 576-77 (9th Cir. 1988). If a nonexertional limitation
23 significantly limits the range of work one can perform,
24 mechanical application of the grids is inappropriate, and a VE is
25 required. <u>Tackett v. Apfel</u>, 180 F.3d 1194, 1102 (9th Cir. 1999).

26

27
28 procedure manuals, including the Hearings, Appeals and Litigation Law Manual (HALLEX) and the Program Operations Manual System (POMS), do not impose judicially enforceable duties. <u>Lowry v. Barnhart</u>, 329 F.3d 1019, 1023 (9th Cir. 2003).

In such a situation, it is permissible to obtain testimony of a vocational expert and to use the grids as a framework for decision. See, <u>Young v. Sullivan</u>, 911 F.2d 180, 182-85 (9th Cir. 1990).

Here, the ALJ concluded that Plaintiff had nonexertional limitations (Tr. 18), obtained and considered the testimony of a VE with respect to the pertinent limitations suffered by Plaintiff, and appropriately concluded that using the rule as a framework, Plaintiff was not disabled. The present case is unlike <u>Perminter v. Heckler</u>, 765 F.2d 870 (9th Cir. 1985), cited by Plaintiff, because here the ALJ did not fail to consider Plaintiff's pain.

### XI. <u>Acceptance of Vocational Testimony</u>

Plaintiff argues that the ALJ erred in not accepting the testimony of the VE to the effect that work did not exist for Plaintiff if Plaintiff actually suffered various hypothetical limitations posited by the ALJ or Plaintiff's counsel at the hearing, including lesser capacities than those ultimately found by the ALJ with respect to lifting and carrying, standing and walking, sitting, withstanding side-effects of medication, psychological functioning (Tr. 74-75), concentration despite pain severe enough to interfere often (Tr. 76), and a complete inability to stoop (Tr. 76-80).

The ALJ did not ultimately conclude that Plaintiff suffered most of these limitations to the extent stated in the various hypothetical questions; thus, the ALJ did not err in not adopting the testimony of the vocational expert that was premised on these inapplicable limitations.

1    With respect to a complete inability to stoop, which the ALJ
2    did conclude applied to Plaintiff, the VE testified that if a
3    person unable to stoop were thereby unable to pick up something
4    that dropped at work but which was required by the terms of
5    employment to be picked up by the worker, then jobs would not be
6    available for such a person; however, the VE further testified to
7    the effect that it was not his understanding that a mere
8    inability to stoop would erode the whole world of work, and that
9    his definition of the normal performance of work did not include
10   Plaintiff's definition of having to pick up anything that dropped
11   on the job. (Tr. 76-79.)

12   The Court concludes that the ALJ was not required to accept
13   VE testimony concerning limitations properly found not to be
14   supported by the evidence or to be credible.

15   XII. Expert Opinion of Dr. Young

16   Plaintiff notes that Dr. Young did not review the June 2002
17   x-ray showing marked deformity of the right femoral head,
18   compatible with avascular necrosis/Legg-Perthes disease, most
19   likely chronic, without evidence of acute boney abnormality.
20   Thus, argues Plaintiff, Dr. Young's opinion would have been even
21   more restrictive than it was without knowledge of the x-ray;
22   further, the report of Dr. Nguyen, who knew about the x-ray, was
23   more accurate and should have been adopted.

24   As previously noted, this case must be remanded because of
25   the failures of the ALJ expressly to evaluate or weigh expert
26   opinions and to state reasons for his weighing and acceptance,
27   and to consider Plaintiff's obesity. Plaintiff will have the
28   opportunity to argue regarding the appropriate weight to be given

30

to Dr. Young's and Dr. Nguyen's opinions on remand.

XIII. <u>Remedy</u>

Plaintiff argues that an award of benefits should be ordered immediately.

A district court is authorized to affirm, modify, or reverse a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The decision whether to remand a matter pursuant to sentence four of § 405(g) or to order immediate payment of benefits is within the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). When a court reverses an administrative agency determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004) (citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002)). It is not necessary to order an award of benefits, <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003), but an award is generally directed where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed. <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396, 1399 (9th Cir. 1988).

Where the ALJ failed to provide legally sufficient reasons for rejecting the treating physicians' opinions, the evidence is credited as true. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000). If there are no outstanding issues that must be resolved before a determination of disability can be made, and where it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence were credited, then remand for

31

1  an award of benefits is appropriate. Id. at 1178. In these

2  circumstances, the record has been fully developed, and further

3  administrative proceedings would serve no useful purpose. Benecke

4  v. Barnhart, 379 F.3d 587, 593-96 (9th Cir. 2004).

5      Here, the ALJ failed to state reasons for rejecting the

6  opinion of Dr. Nguyen, Plaintiff's treating physician, regarding

7  his physical capacity. If that opinion were credited, Plaintiff

8  would be incapable of carrying ten pounds, sitting for six hours,

9  or working without pain that often interfered with attention and

10 concentration; according to the VE, work would not exist for such

11 a claimant (Tr. 75-76). The ALJ also failed to state reasons for

12 rejecting the opinion of Dr. Barnett, the consulting, examining

13 psychiatrist; if accepted, the opinion would appear to render

14 Plaintiff disabled pursuant to the VE's testimony (Tr. 74-75).

15     However, this case is not an appropriate one for ordering

16 benefits or a remand solely for the purpose of awarding benefits.

17 One fundamental error of the ALJ was in the consideration of

18 obesity. As Defendant notes, the ALJ appears to have failed

19 failure to evaluate and include this apparently undisputed

20 impairment at any stage of the sequential analysis despite the

21 presence of expert opinions imposing varied limitations based on

22 obesity. Further analysis of this condition and the combination

23 of Plaintiff's impairments thus must be undertaken at all

24 pertinent stages of the sequential analysis. The ALJ made legally

25 correct and supported negative credibility findings with respect

26 to Plaintiff, and the expert opinions regarding physical

27 limitations from obesity rested in significant part on

28 Plaintiff's subjective claims as distinct from extensive

objective findings. Because of this, and in light of the complete
absence of express reasoning in the decision before the Court,[6]
this is an appropriate case for remand to the ALJ for
consideration, including the taking of any helpful additional
evidence, of all Plaintiff's impairments.

Because additional issues remain to be addressed, and
further because it is not clear that an award of benefits to
Plaintiff should result after the additional issues are addressed
on remand, the Court will order the matter remanded for further
consideration of evidence and entering of all necessary and
appropriate findings with respect to the application for SSI
pending before the Court.

DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's
decision was not supported by substantial evidence in the record
as a whole and was not based on proper legal standards.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42
U.S.C. § 405(g) for further consideration, consistent with this
decision, of Plaintiff's status as disabled, including whether or
not Plaintiff a) suffered from a severe impairment or
impairments, b) could perform his past work, and c) if
appropriate, whether on the basis of the Plaintiff's age,
education, work experience, and residual functional capacity, he
could perform any other gainful and substantial work within the

_____

[6] The Court notes that the complete absence of reasoning regarding expert opinions in the ALJ's decision
makes it difficult to know if application of rules for crediting certain evidence would be constructive.

economy; and for preparation of a decision containing all
necessary or required findings and reasons; and

    3. Judgment BE ENTERED for Plaintiff Clem Kenneth Underwood
and against Defendant Jo Anne B. Barnhart.


IT IS SO ORDERED.

**Dated:**   **May 24, 2006**                 **/s/ Sandra M. Snyder**
icido3                        UNITED STATES MAGISTRATE JUDGE